UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRIAN QUINN,

       Plaintiff,

CASE NO. 1:12-CV-361

v.

HON. ROBERT J. JONKER

DEBRA NOVAR et al.,

       Defendants.
_____/

**OPINION and ORDER**

This is a civil rights action alleging violations of the Fourth and Fourteenth Amendments. On November 8, 2013, the Court heard oral argument on Defendants' dispositive motions. The Court granted in part and denied in part Defendants Novar and Habelitz's motion for summary judgment (docket #47) and granted Defendants Huff, Dally, Masters, and Pope's motion for partial dismissal, or in the alternative, motion for summary judgment (docket #49). (Docket #61.) The Court reserved ruling on two claims against Defendant Novar pending supplemental briefing. (*Id.*) The two remaining claims are (1) whether Novar arrested Plaintiff without probable cause, and (2) whether Novar's use of pepper spray in the course of arresting Plaintiff was excessive force. The parties have filed supplemental briefs and Novar's summary judgment motion is ready for decision. For the reasons set forth below, the Court will grant Novar's motion for summary judgment on these two claims.

**I. Background**

At 1 a.m. on June 7, 2011, Emmet Township police officer Debra Novar was patrolling when she spotted a truck that appeared to be parked behind a closed hair salon. (Docket # 54-3, Page ID 526.) Earlier in the week, after a storm, Emmet Township police had investigated reported copper thefts of downed wires in the vicinity. (*Id.*) Finding the truck's location suspicious, Novar made

a U-turn and pulled up near the truck. (*Id.* at 527.) She discovered that the truck was actually parked at an apartment building. (*Id.* at 528.) She then saw people in the shadows of an adjacent carport about 150 to 200 feet away. (*Id.*) The two people were Plaintiff Brian Quinn and his father, Arthur Quinn.

Novar was in full uniform and a fully marked police SUV. She exited the SUV and shouted to the Quinns something like "hey yous guys" or "yous should come over here." (*See id.* at 529; Docket #53-2, Page ID 450.) Novar did not use words to identify herself as a police officer, (docket #54-3, Page ID 530), but she was in uniform by her marked SUV (*id.* at 529). According to Novar, either Plaintiff or his father said "no" and said that she should come to them. (*Id.* at 529.) Novar repeated her initial request more sternly. (*Id.*) According to Novar, the voices responded "see you tomorrow" or "see you later" and walked through the carport toward the apartment door. (*Id.*) Novar followed the men into the unlocked apartment building. (*Id.* at 530.) The hallway of the apartment building was accessible from both the front and back through unlocked doors. The building has no postings to keep people from using the doors to enter the hallway and knock on the doors of particular units in the building. (*See id.*; *see also* docket #53-3, Page ID 483–84 (photos of hallway); Docket #63-3, Page ID 733–39.)

Once in the publicly accessible hallway, Officer Novar saw Plaintiff standing at the top of a short staircase in front of an apartment door. (*See* docket #54-3, Page ID 530; docket #53-3, Page ID 483–84.) Novar was wearing a police uniform. (Docket #54-3, Page ID 530.) Plaintiff testified that his father went into the apartment immediately and he never saw Novar in her police uniform. (Docket #53-2, Page ID 456.) Plaintiff did identify Novar as an officer. Indeed, Plaintiff was "relieved" to see Novar because he thought she was investigating the unidentified person outside.

2

(Docket #53-2, Page ID 454.) Soon, however, that changed when it became clear Novar was after him.

Plaintiff and Novar exchanged words, and Plaintiff told Novar that she was not supposed to be in the building. (*See id.*; docket #54-3, Page ID 531.) Novar asked if the men lived in the building and Plaintiff said—truthfully—they did not. (Docket #54-3, Page ID 531.) Novar asked Plaintiff for identification. (*Id.*) Plaintiff flatly refused to provide it. (*Id.*) The Emmet Township Municipal Code makes it a crime to "knowingly obstruct, resist, hinder or oppose" a member of the police department "in discharge of his duties." *See* § 38-221; *see also Mich. Comp. Laws* § 750.479. Because Plaintiff's refusal violated the law, Novar decided to arrest Plaintiff and reached out to his wrist to effect the arrest. (*Id.*) Plaintiff pulled away and attempted to enter the apartment. (*Id.*) As he stepped inside, Novar stuck her foot in the door to keep it from closing. (*Id.*) Someone—either Plaintiff or his father—banged the door against Novar several times. (*Id.* at 535.) Plaintiff's father was later convicted of assaulting Novar. (*See* docket #53-2, Page ID 444; Hearing Tr., at page 42–43.) Novar reached her arm into the apartment and sprayed pepper spray behind the door at both men. (*Id.* at 534–35). Back-up arrived and assisted in taking Plaintiff and his father into custody. (*Id.* at 535–36.)

## II. Legal Standards

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are facts which are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.* In deciding a motion for summary judgment, the court must draw all inferences in a light most favorable to the non-moving party, but

may grant summary judgment when "'the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986)).

### III. Discussion

The two remaining claims with respect to Novar's motion for summary judgment are whether Novar arrested Plaintiff without probable cause, and whether she used excessive force to secure the arrest. Novar argues that the arrest was lawful, there was no excessive force, and she is entitled to qualified immunity on both claims.

#### A. Probable Cause for Arrest

The Fourth Amendment prohibits unreasonable searches and seizures and mandates that "no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV. "The Supreme Court has interpreted this as requiring officers to obtain a warrant supported by probable cause before they may lawfully enter a home." *United States v. Watson*, 489 F. App'x 922, 925 (6th Cir. 2012) (citing *United States v. United States Dist. Ct.*, 407 U.S. 297, 315–16 (1972)). However, where an officer initiates an otherwise proper arrest outside of the home, a suspect may not thwart the arrest by retreating into his home. *United States v. Santana*, 427 U.S. 38, 42–43 (1976).

An officer has probable cause to arrest if there is a fair probability that the individual to be arrested has either committed or intends to commit a crime. *Northrup v. Trippett*, 265 F.3d 372, 379 (6th Cir. 2001). The burden is on the government to establish that there was probable cause sufficient to justify a warrantless arrest. 1 Wright, et al., Fed. Prac. & Proc. Warrantless Arrests § 58, at 142 (4th ed. 2008). If the arrest was made without probable cause, neither subsequent events nor later-acquired information can render the arrest lawful. *Id.*

4

In this case, Novar arrested Plaintiff for violation of Emmet Township Ordinance § 38-221, which prohibits the knowing obstruction, resistance, hindering, or opposing of a police officer in the discharge of his duties. (*See* Novar Dep., docket #48-1, Page ID 313.) Plaintiff flatly refused to provide identification in Novar's presence. At that point, Novar had probable cause to arrest because there was at least "a fair probability" that Plaintiff had committed a misdemeanor in her presence. *Northrup*, 265 F.3d at 379. Once Novar had probable cause for arrest, Plaintiff could not defeat a proper arrest by fleeing into the apartment. *Santana*, 427 U.S. at 42–43. Novar is therefore entitled to summary judgment on Plaintiff's unlawful arrest claim.

### B. Qualified Immunity for Arrest

Alternatively, Novar is entitled to qualified immunity on Plaintiff's claim that Novar lacked probable cause for arrest. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments," and "protects all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, ___ U.S. __, 131 S. Ct. 2074, 2085 (2011) (internal quotation marks omitted). A case directly on point is not required for a court to conclude that the law is clearly established, "but existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* at 2083.

In *Risbridger v. Connelly*, 275 F.3d 565 (6th Cir. 2002), the Sixth Circuit reviewed a district court's denial of qualified immunity to a police officer under similar facts. In that case, the suspect refused to provide identification upon an officer's request and the officer arrested the suspect in

5

violation of a city ordinance which made it a misdemeanor to "[a]ssault, obstruct, resist, hinder, or oppose any member of the police force . . . in the discharge of his/her duties as such." *Id.* at 568. The suspect brought a § 1983 claim for violation of his constitutional rights. *Id.* The Sixth Circuit reversed the district court and granted the officer qualified immunity because it was not clearly established that the suspect's arrest for violation of the ordinance based on his refusal to provide identification violated the suspect's Fourth Amendment rights. *Id.* at 572.

But in effecting such an arrest, may the officer pursue her fleeing suspect into an apartment? In *Stanton v. Sims*, the Supreme Court recently considered whether an officer was entitled to qualified immunity where the officer injured a non-suspect while kicking in a fence gate in pursuit of a misdemeanor suspect. No. 12-1217, slip op. at *1–2 (Nov. 4, 2013). The Court held that the officer was entitled to qualified immunity, specifically observing that although a warrant is usually required for home entry, there is no categorical rule for all cases involving minor offenses. *Id.* at *3. It thus found that the law regarding warrantless entry in hot pursuit of a fleeing misdemeanant is not clearly established. *Id.* at *4–5. The case for lawful pursuit is even stronger when the fleeing misdemeanant is attempting to evade lawful arrest already in progress. *See Santana*, 427 U.S. at 42–43.

The ordinance in this case is almost identical to the ordinance in *Risbridger*. Finding no pertinent facts distinguishing *Risbridger* from the present case, Novar is entitled to qualified immunity with respect to Plaintiff's unlawful arrest claim because it is not clearly established that Plaintiff's arrest for violation of the ordinance based on his refusal to provide identification violates his Fourth Amendment rights. Plaintiff refused to furnish identification while he was in the hallway, not inside the apartment. Although Novar pursued Plaintiff into the apartment to effectuate a warrantless arrest, Novar is still entitled to qualified immunity because the law is not clearly

established that hot pursuit of a misdemeanant into a home violates his Fourth Amendment rights. *Stanton*, slip op. at *4–5; *Santana*, 427 U.S. at 42–43.

Plaintiff argues that *Risbridger* is distinguishable because Novar did not have articulable reasons to ask Plaintiff for identification. The Court disagrees. Novar had at least reasonable suspicion necessary to conduct a *Terry* stop in the hallway of the building to gather additional information. *Terry v. Ohio*, 392 U.S. 1 (1968). The basis for reasonable suspicion includes that Plaintiff and his father were outside an apartment building at 1 a.m. in an area where there had recently been reports of copper theft and Plaintiff admitted that he did not live in the building. Even taking the evidence in a light most favorable to Plaintiff—therefore assuming that Plaintiff did not know Novar was an officer until she entered the apartment building in her uniform—Novar had articulable facts to support a reasonable suspicion that crime may be afoot. Thus, in that regard, *Risbridger* is not factually distinguishable.[1] Novar is entitled to qualified immunity on Plaintiff's unlawful arrest claim.

### C.    Qualified Immunity on Excessive Force Claim

Plaintiff also alleges that Novar's use of pepper spray constitutes excessive force even if the arrest itself was lawful. Novar argues that she is entitled to summary judgment because her use of pepper spray was not excessive force and she is entitled to qualified immunity. "[C]laims alleging excessive force brought against law enforcement officials are to be analyzed under the objective reasonableness standard of the Fourth Amendment." *Bass v. Robinson*, 167 F.3d 1041, 1045 (6th Cir. 1999) (internal quotation marks omitted). Proper application of this standard requires "'careful

---

[1] Plaintiff also now argues that the ordinance itself is unconstitutional. The parties have not, however, briefed this issue, and it is not before the Court at this time. In light of *Risbridger*, even if Plaintiff's argument had merit for future cases, it could not prevent application of qualified immunity in this case.

attention to the facts and circumstances of each particular case, including (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)). The question is whether the totality of the circumstances justifies a particular sort of seizure, and the question must be answered without regard to the officer's underlying intent or motivation. *Id.* Reasonableness must be judged from the perspective of a reasonable officer on the scene, not hindsight. *Id.* "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396–97. Prior decisions on the use of pepper spray and similar chemical irritants are highly fact-specific. *See* 65 A.L.R. 6th 93, *When Does Use of Pepper Spray, Mace, or Other Similar Chemical Irritants Constitute Violation of Constitutional Rights* (West 2011) (surveying cases).

The Sixth Circuit in *Greene v. Barber*, 310 F.3d 889 (6th Cir. 2002), considered whether an officer's use of pepper spray was excessive force. There, the plaintiff and an officer engaged in a verbal altercation at a courthouse regarding the plaintiff's towed car. *Id.* at 892–93. The altercation escalated, drawing the attention of other officers. *Id.* Eventually, after the plaintiff insulted the officer, the officer stated that the plaintiff was under arrest, later charging the plaintiff with creating a disturbance and hindering and opposing a police officer. *Id.* at 893. The plaintiff backed away from the officer and resisted restraint. The officer then used pepper spray and handcuffed the plaintiff. *Id.* The Sixth Circuit, applying an "objective reasonableness" test, found that although the plaintiff had actively resisted arrest, the use of pepper spray may have been excessive because the

offense was not severe and the plaintiff was not threatening anyone's safety or attempting to evade arrest by flight. *Id.* at 898. Nonetheless, the Sixth Circuit granted the officer qualified immunity because there was no clearly established right to be free from the level of force used under the circumstances. *Id.* at 898–99. Because the officer had used the pepper spray as directed by the police department's manual and the department's use of force policy permitted an officer to spray a person who aggressively resisted arrest, either verbally or physically, a reasonable officer would not have known it might have been unlawful to use pepper spray. *Id.* at 899.

By contrast, the Sixth Circuit denied an officer qualified immunity for excessive force for use of pepper spray in *Grawey v. Drury*, 567 F.3d 302 (6th Cir. 2009). In that case, the plaintiff who had just been in a bar fight approached a responding officer to explain what had happened. *Id.* at 306. As the plaintiff tried to explain, he reached for his injured head. *Id.* Each time he reached for his head, the officer interrupted him and told him to put his hands down. *Id.* This agitated the plaintiff and the plaintiff began to walk away from the officer. *Id.* As the man walked away, the officer discharged pepper spray at the plaintiff. *Id.* The Sixth Circuit reasoned that a reasonable police officer would have known that "using pepper spray on a suspect who has submitted, is not resisting, and is no danger to anyone constitutes excessive force." *Id.* at 314. Moreover, because the suspect in that case lost consciousness as a result of the pepper spray, it was clearly established that the force was excessive. *Id.*

In this case, the facts are at least as strong for Novar as those in *Greene*. Plaintiff's alleged criminal activity was not especially severe, but Plaintiff actively resisted Novar. He committed a misdemeanor in her presence by refusing to provide identification. He then attempted to avoid Novar's lawful arrest by fleeing into an apartment in which he admittedly did not reside. All this

9

occurred in the context of the officer's investigation of recent thefts in the area in the wake of a storm. Moreover, Plaintiff did not merely attempt to flee, he actively and physically engaged a uniformed officer by personally, or through an accomplice, assaulting her with the apartment door. This resulted in Plaintiff's father's conviction for assault. Novar was the only officer on the scene at the time. Unlike the successful plaintiff in *Grawey*, Plaintiff in no way submitted to Novar. To the contrary, he actively and physically resisted. Under these circumstances, as in *Greene*, a reasonable officer would not violate any clearly established law by discharging pepper spray on a plaintiff who was fleeing arrest and that, either on his own or through an accomplice, was assaulting her with the apartment door. Novar is entitled to qualified immunity on the excessive force claim.

### D. Reasonable Expectation of Privacy in the Hallway

The Court previously ruled on the record at oral argument that Defendant Novar's summary judgment motion was granted with respect to Plaintiff's claim for illegal search and seizure in the apartment hallway. (*See* Order, docket #61, Page ID 672.) In his supplemental brief on unlawful arrest and excessive force, Plaintiff now asks the Court to reconsider its prior ruling.

"In analyzing whether a subjective expectation of privacy is objectively reasonable, this court considers a number of factors: (1) whether the defendant was legitimately on the premises; (2) his proprietary or possessory interest in the place to be searched or the item to be seized; (3) whether he had the right to exclude others from the place in question; and (4) whether he had taken normal precautions to maintain his privacy." *United States v. Dillard*, 438 F.3d 675, 682 (6th Cir. 2006). In *Dillard*, the Sixth Circuit considered whether a defendant had an objectively reasonable expectation of privacy in a common hallway in an apartment complex. The court held that the

defendant's expectation was unreasonable because the first floor doors were not only unlocked but ajar, which "did nothing to indicate to officers that they were not welcome in the common areas." *Id.* Moreover, the court observed that there was no visible way for the police to alert the tenants of their presence—no intercom system or doorbell. *Id.* By comparison, in *United States v. Kimber*, the Sixth Circuit found a defendant's expectation of privacy in a lobby area objectively reasonable where the apartment building was locked and police forced the door open. 395 F. App'x 237, 248 (6th Cir. 2010). Similarly, in *United States v. Carriger*, the Sixth Circuit held that a tenant in an apartment building had a reasonable expectation of privacy in common areas not open to the general public where a government agent entered a locked building by slipping into the building without permission when some workmen were leaving. 541 F.2d 545, 548, 550 (6th Cir. 1976).

In this case, the apartment door that the parties entered was unlocked. In fact, Novar had previously visited the apartment building on patrol and was aware that the apartment building was not normally locked. (Novar Dep., docket #54-3, Page ID 540.) It was a hallway accessible by either the front or back through an unlocked door. This is strong evidence of a lack of a subjective expectation of privacy. Further, there is no evidence of a doorbell, intercom, security guard, or other barrier required for entry; rather, anyone could simply open the door.

At oral argument, Plaintiff argued that the front door—as opposed to the back door entered by the parties—demonstrates Plaintiff's expectation of privacy. For support, Plaintiff has attached new photographs showing that there is a lock on the front door of the apartment building, but there is still no evidence in the record that the door remains shut or the building remains locked. To the contrary, Novar's unrebutted testimony is that, in her experience as a police officer, she has previously visited the building and found the outside door unlocked. (*Id.*) Moreover, the

11

photographs do not show an intercom or other security system to keep solicitors or other visitors from entering the hallway without permission. Plaintiff has not introduced affidavits or other evidence from Plaintiff, his father, or apartment residents to support that the building remains locked, or that there is a working intercom system or some other way for residents to control the flow of entrants. In light of the record before the Court, Plaintiff has not established that he had a reasonable expectation of privacy in the apartment hallway. Therefore, the Court will deny Plaintiff's request for reconsideration of the Court's prior ruling.

### IV. Conclusion

For the reasons stated above, the Court will grant Novar's motion for summary judgment with respect to the unlawful arrest and excessive force claims.[2]

**ACCORDINGLY, IT IS ORDERED** that Novar's motion for summary judgment is granted with respect to Plaintiff's unlawful arrest and excessive force claims.

Dated: December 10, 2013  /s/ Robert J. Jonker
ROBERT J. JONKER
UNITED STATES DISTRICT JUDGE

---

[2] Plaintiff's remaining claims in this action are (1) an excessive force claim against Defendant Habelitz based on the handcuffing and other activity in arresting Plaintiff at the scene, and (2) an excessive force claim against Defendants Huff, Dally, Pope, and Masters for an alleged beating at the jail. All parties agreed at oral argument that the latter claim involves disputed issues of material fact precluding summary judgment. As to the handcuffing claim, if the jury credits Plaintiff's sworn claim that Habelitz picked him up and dropped him several times after Plaintiff was already restrained, the jury could find excessive force. The jury may well reject Plaintiff's version of the experience and conclude that Habelitz was simply trying to take Plaintiff from a face-down position to his knees and then to his feet. But, as the Court intimated on the record at the hearing, this is a jury question on the present record.